IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LESEAN ANDERSON,<br><br>                Petitioner,<br><br>vs.<br><br>HENRY GRAHAM, Superintendent,<br>Auburn Correctional Facility,<br><br>                Respondent. | No. 9:16-cv-00038-JKS<br><br>MEMORANDUM DECISION |

LeSean Anderson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Anderson is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Auburn Correctional Facility. Respondent has answered the Petition, and Anderson has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On October 12, 2011, Anderson was charged with one count each of second-degree and third-degree criminal possession of a weapon. On direct appeal of his conviction, the Appellate Division of the New York Supreme Court recounted the following facts underlying the charges against Anderson:

> After a confidential informant (hereinafter CI) notified the police that [Anderson] had a gun and was in a green BMW at a certain location, the police began looking for that vehicle and [Anderson]. One officer saw [Anderson] in the green BMW and others followed the vehicle, but when they found it parked the driver had fled. The police determined that the unsecured vehicle needed to be towed, so they conducted an inventory search. During that search, they discovered a loaded handgun in the trunk.

*People v. Anderson*, 987 N.Y.S.2d 252, 252 (N.Y. App. Div. 2014).

Following unsuccessful plea negotiations, Anderson requested and received a change of counsel. At a hearing to address *Mapp*[1] and *Dunaway*[2] issues relating to the propriety of the towing and inventory search of the vehicle, trial counsel indicated that Anderson now wished to proceed *pro se*. In response to Anderson's request, the trial court stated:

> Before we proceed and let you go pro se, it is incumbent upon me to alert you to the dangers of doing so.
> While recognizing the right of a person to defend himself or herself, the law recognizes that such a choice may not be a wise one. Let me alert you to some of the dangers of self-representation so that you will be aware of them before you finally decide whether you wish to give up your right to be represented by a lawyer.

The court then warned Anderson that law is a difficult and technical profession that requires years of schooling, that most *pro se* defendants are unsuccessful, and that he would be held to the same standard of procedure as any attorney would. The judge explained that evidence might be excluded because of Anderson's inability to articulate a basis to include it, that the law uses terms of art and case names to describe concepts with which a layman could not expected to be familiar, that he would lose the benefit of his attorney's considerable years of trial experience, and that the prosecutor would not "go easy" on him.

The court then inquired into Anderson's education, literacy, and his experience with the criminal justice system and self-representation. After these questions, the court stated:

> You know, my advice to you now is just telling you that I think you are making a mistake. I don't know what chance you have to prevail at this trial, but I know and my

---

[1] *Mapp v. Ohio*, 367 U.S. 643 (1961) (a short-hand reference to excluding evidence obtained as a result of an unconstitutional search and seizure).

[2] A *Dunaway* hearing is used "to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial." *Montgomery v. Wood*, 727 F. Supp. 2d 171, 185-85 (W.D.N.Y. 2010); *see Dunaway v. New York*, 442 U.S. 200 (1979).

experience leads me to conclude, and I have to share with you, your chances of prevailing at this trial are going to be less if you do it by yourself. As long as you know that.

You are taking an inordinate risk; that you are placing your whole case on your own shoulders. You are assuming you can process all of what goes on through a trial; that you know how it is to speak to a jury, in terms of selecting one, making an opening statement and a closing.

There are lawyers that after five, ten years of practicing still have difficulty, are nervous, are upset, and are still honing their skills after five and ten years of practice. And you have never even seen a trial.

My concern is that as well meaning as you are in terms of what you want to do, you are just opening yourself up to a great, great possibility that whatever it is that you could have accomplished at trial won't be fully accomplished because you won't understand all of what it is that's going by.

After Anderson continued his request to represent himself, the trial court asked him to explain why. The court listened to the reasons Anderson felt he would be better off representing himself, and expressed it's opinion that Anderson's proposed strategy of what he would have done differently at a previous pre-trial hearing would have been unavailing. Anderson again expressed that he wished to represent himself, and the court replied, "I guess no one is going to dissuade you. I have tried to forewarn you as best I can and tell you the pitfalls of going by yourself." After further discussion, the court relieved counsel and asked him to standby "just in case."

After Anderson cross-examined two of the People's witnesses, the court took a brief recess and then re-opened colloquy with Anderson with the stated purpose of providing the appellate court with a more complete record. At the completion of these questions, the court again strongly urged Anderson not to proceed *pro se*, and gave him the opportunity to change his mind. This time, Anderson requested to confer with his discharged counsel, after which, he indicated that he wanted counsel representation again. The following exchange occurred:

THE COURT: Let me say this to you, this is a final decision. Don't take it lightly. If you want [counsel] back in, that's it. I am not going to go back again if all of a sudden next week you are not feeling good about it. Do you understand that?

3

| | |
|---|---|
| [ANDERSON:] | Yes, your honor. |
| THE COURT: | I mean, you are absolutely sure? |
| [ANDERSON:] | Yes, your Honor. I just wanted communication, pretty much. I feel that's non-existent at times. I feel like that's not fair to me. |
| . . . . | |
| THE COURT: | Bottom line, do you want him or do you want to do it yourself? |
| [ANDERSON:] | Him. |
| THE COURT: | You are sure of that? |
| [ANDERSON]: | Yes, your Honor. |

The now re-appointed attorney then finished the hearing. After the close of evidence, the trial court asked counsel whether Anderson wished to allege operation or ownership of the vehicle in question at the hearing. After conferring with Anderson, counsel advised that Anderson alleged no ownership or operation of the vehicle in question, and specifically denied that he had driven it. The trial court then made factual findings regarding the inventory search. Ultimately, the court concluded that Anderson had no standing to contest the inventory search because he failed to allege that he was either the driver of the vehicle or had any possessory interest in it. As an alternative ground, the court determined that the inventory search was proper. As a result, the loaded handgun (which was obtained during the search), was not suppressed.

Following the suppression hearing, Anderson, still represented by counsel, appeared in court to accept a negotiated plea bargain. Under that agreement, Anderson would plead guilty to second-degree criminal possession of a weapon (Count 1), in satisfaction of that indictment and additional indictments before the court. The court explained that "the sentence to be imposed, and I'm not treating him as a persistent, but rather only as a second felony offender, there would be no more than

4

a determinate twelve with the five year period of post release supervision, and a full Waiver of Appeal." Anderson confirmed that he understood that he would be giving up his right to appeal his conviction and sentence, and, with his lawyer, executed the Waiver of Appeal form.

Anderson assured the court that he was not under the influence of drugs or alcohol and that no one had threatened him or forced him to plead guilty. He stated that he had a sufficient opportunity to speak with his attorney about the plea and that he was satisfied with counsel's representation. After acknowledging that he understood the rights he would be giving up as part of his guilty plea and the finality of his plea, Anderson admitted the factual basis of Count 1 and the court accepted his guilty plea. The court subsequently sentenced him, as contemplated in the agreement, as a second violent felony offender to a determinate imprisonment term of 12 years to be followed by 5 years of post-release supervision.

Through counsel, Anderson appealed his conviction, arguing that: 1) his waiver of appeal was not knowing, voluntary, or intelligent; 2) his waiver of his right to counsel was not voluntarily or intelligently made; 3) the trial court erroneously determined that Anderson did not have standing to challenge the inventory search; and 4) the trial court incorrectly concluded that the inventory search was proper. Anderson also filed a *pro se* supplemental brief challenging the denial of his suppression motion. The Appellate Divison unanimously affirmed Anderson's conviction in a reasoned opinion issued on June 12, 2014. *Anderson*, 987 N.Y.S.2d at 252. Anderson sought leave to appeal to the New York Court of Appeals, asking that court to review his claim that the trial court failed to properly inquire into whether he made a knowing and intelligent waiver of his right to counsel during the suppression hearing. The leave application was summarily denied on October 1, 2014. *People v. Anderson*, 21 N.E.3d 571, 571 (N.Y. 2014). Anderson moved for reconsideration

of his leave application, which the Court of Appeals denied without comment on January 5, 2015. *People v. Anderson*, 27 N.E.3d 473, 473 (N.Y. 2015).

Proceeding *pro se*, Anderson then moved in the county court pursuant to New York Criminal Procedure Law ("CPL") § 440.20 to set aside his sentence on the ground that it illegally imposed a determinate prison term rather than an indeterminate term. The county court denied the motion in a reasoned, unpublished decision issued on September 17, 2015. Anderson sought leave to appeal the denial to the Court of Appeals, which was denied on December 17, 2015.

Anderson then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on January 11, 2016. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Anderson argues that he did not validly waive counsel at his suppression hearing and the trial court therefore erred in allowing him to proceed *pro se* for a portion of the hearing.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially

6

indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the

state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Anderson has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

In his Petition, Anderson alleges that the trial court did not ensure that he validly waived his right to counsel at the suppression hearing. According to Anderson:

> The trial court allowed me to proceed pro se before it was satisfied that I knowingly, voluntarily, and intelligently waived the right at my pre-trial *Mapp/Dunaway* hearing. [The trial court erred by] [a]llowing me to proceed without counsel for [a] majority of the hearing before going back to open up the waiver colloquy as the court was compelled to "go back" and ask questions it "should have asked" before allowing me to proceed without counsel. The court acknowledged this error several times throughout the colloquy.

Anderson appears to refer to a statement the court made on the record when it reopened the colloquy after Anderson had cross-examined two witnesses:

| | |
|---|---|
| THE COURT: | I went through the colloquy a Judge is supposed to go through before I allowed you to go forward. There are some other questions I should have asked. I asked them partially, but because there may be an appellate record here, on those situations, clearly, the Appellate Division, and rightfully so, looks very carefully to make sure a Judge has exhaustively talked to you about being a self-represented person. So let me go back. |

The Sixth Amendment "right to assistance of counsel implicitly embodies a correlative right to dispense with a lawyer's help." *Faretta v. California*, 422 U.S. 806, 814 (1975) (citation and internal quotation marks omitted). "When an accused manages his own defense, he relinquishes, as purely a factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Id*. at 835 (citation and internal quotation marks omitted). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* (citation and internal quotation marks omitted). There is no "formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). Rather, the determination of whether a defendant has knowingly and intelligently waived his rights to counsel depends on "a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* In addition, the court must specifically warn a defendant electing to proceed *pro se* "of the hazards ahead." *Id*. at 88-89.

But Anderson's challenge to the court's handling of his request to represent himself is foreclosed by his guilty plea. It is well settled that a guilty plea represents a "break in the chain of

events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.'" *United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) (quoting *Tollett*, 411 U.S. at 267); *see United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non jurisdictional defects in the prior proceedings.").

By voluntarily pleading guilty, Anderson forfeited his right to bring claims premised on errors that the trial court allegedly made prior to the plea process. Anderson does not allege that his plea was involuntary or that his counsel was ineffective. Consequently, review of his Sixth Amendment claim is precluded here. *See Ploof v. Gorczyk*, 104 F.3d 356, *2 (2d Cir. Dec. 9, 1996) (unpublished) ("In his habeas petition, petitioner has not challenged the voluntary and intelligent nature of his guilty plea, nor the effectiveness of his counsel. He challenges only the denial of his Sixth Amendment right to self-representation which occurred, if at all, prior to his plea. Thus, his Sixth Amendment claim is waived.");[3] *United States v. Durham*, No. 2:06-CR-131, 2010 WL 2521728, *13 (D. Vermont Apr. 21, 2010), *report & recommendation adopted*, 2010 WL 2521362, *aff'd*, 460 F. App'x 74 (2d Cir. 2012).

Moreover, even if Anderson had not waived his Sixth Amendment claim, he would not be entitled to relief on it. Prior to granting Anderson's motion, the trial court surmised that Anderson was literate, had his GED, and had no physical or mental limitations. Anderson further indicated

---

[3] Cited for persuasive value pursuant to 2d Cir. Local Rule 32.1.1(b)(1).

that he understood what was expected of him and that he would be expected to abide by the same rules that governed attorney conduct. He repeatedly stated that he wanted to exercise his Sixth Amendment right to represent himself. Under these circumstances, the Appellate Division reasonably concluded that "Supreme Court conducted an appropriate searching inquiry into [Anderson's] request to proceed pro se at the suppression hearing, assuring that his decision to proceed without counsel was unequivocal, competent, intelligent and voluntary." *Anderson*, 987 N.Y.S.2d at 253; *cf. Faretta*, 422 U.S. at 835 (trial court deprived defendant of his constitutional right to defend himself where defendant clearly and unequivocally declared that he wanted to represent himself, was literate, competent, and understanding). Furthermore, the court mitigated any problems Anderson may have encountered when it asked discharged counsel to standby and reappointed counsel when requested. Anderson therefore cannot prevail on any claim that the trial court erred in allowing him to represent himself.

## V. CONCLUSION

Anderson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 21, 2017.

                                                  /s/ James K. Singleton, Jr.
                                                  JAMES K. SINGLETON, JR.
                                                  Senior United States District Judge